**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Hope Davis,**<br>      **Plaintiff,**<br><br>      **v.**<br><br>**Universal Protection Services,<br>LLC D/B/A Allied Universal<br>Security Services, LLC.,**<br><br>      **Defendant** | **CIVIL ACTION**<br><br><br>**NO. 20-cv-01758** |

<u>**MEMORANDUM RE: STANDING AND MOTION FOR SUMMARY JUDGMENT**</u>

Baylson, J.                                                                    September 3, 2021

     The primary issue concerns whether Plaintiff has standing to sue Defendant for its alleged violations of the FCRA in light of Third Circuit precedents and the recent Supreme Court decision in <u>TransUnion LLC v. Ramirez</u>, 141 S. Ct. 2190 (2021).   Also pending before the Court is Plaintiff's Motion to Certify a Class (ECF 62.)  For the reasons that follow, the Court (1) concludes that Plaintiff does not have standing, and the case must be dismissed for lack of jurisdiction; and (2) alternatively, even if Plaintiff does have standing, the Court will grant Defendant's Motion for Summary Judgment and dismiss the case for that reason.

## I.   <u>INTRODUCTION</u>

     Federal jurisdiction in this case was invoked under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681p.  The FCRA regulates consumer reporting agencies that compile and disseminate personal information about consumers. 15 U.S.C. § 1681. Under the Act, there is a cause of action for consumers to sue and recover damages for certain violations. § 1681n(a).

In Plaintiff's Second Amended and Supplemental Complaint ("SASC"), which is the operative complaint, Plaintiff alleges that the FCRA makes it presumptively unlawful to obtain and use a consumer report for employment purposes unless the employer complies with the FCRA's notice requirements.  (SASC, ECF 91-2.)  Plaintiff has specifically alleged that the Defendant violated § 1681b(b)(3) by denying employment opportunities to Plaintiff based wholly or partly on Plaintiff's consumer report without first providing Plaintiff with notice and a copy of the report.  Plaintiff filed her complaint on behalf of an "Adverse Action Class," seeking statutory damages, costs and attorneys' fees, and other appropriate relief on behalf of Plaintiff and the putative class.

Plaintiff argues that Defendant's failure to provide Plaintiff with copies of Plaintiff's consumer report and pre-adverse action notice was in violation of the requirements set forth by § 1681b(b)(3), depriving Plaintiff of a meaningful opportunity to learn what the report contained and to discuss its contents with Defendant.  Further, Plaintiff argues that she only obtained a copy of the consumer report by requesting it herself directly from the reporting agency, Sterling.

## II.  PROCEDURAL HISTORY

Plaintiff filed her original Complaint on April 2, 2020. (ECF 1).  Defendant moved to dismiss the individual and class allegations that fell outside of the two-year limitations period for FCRA claims as well as the individual and class allegations, contending that Defendant did not provide Plaintiff or putative class members with a copy of their FCRA rights.  (ECF 10.)  This Court granted the dismissal of the individual and class allegations of § 1681b(b)(3)(A)(ii) regarding Defendant's alleged failure to provide a summary of FCRA rights, without prejudice and with leave to amend, but denied Defendant's request to dismiss or strike class allegations. Plaintiff then filed an Amended Complaint (ECF 33.)  Soon after, Defendant filed a Motion for

Judgment on the Pleadings, which Plaintiff opposed.  (ECF 37, 43.)  Discovery proceeded.  While these motions were pending, Defendant filed a Motion for Summary Judgment, (ECF 68), to which Plaintiff responded, (ECF 86.)

Despite this somewhat complex procedural status, and without ruling on all of the pending motions, this Court denied Plaintiff's Motion to file a Substituted Amended Complaint (ECF 87), but did allow Plaintiff to file, with proper support, a Motion for Leave to File a Second Amended Supplemental Complaint ("SASC") (ECF 87, 88).  The Court required the SASC to include a detailed explanation about the underlying facts of the alleged "mistake" made by Plaintiff in the original Complaint.

The Court granted Plaintiff's Motion for Leave to File the SASC on June 28, 2021.  (ECF 96.) Defendant answered the SASC.  (ECF 100.)

### III. PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff Hope Davis applied to work as a security guard on Tulane University's campus in August 2019 and was conditionally offered employment pending the successful completion of a background check.  (SASC ¶¶ 15–17.)  Defendant, Allied Universal Security Services, LLC ("Allied"), obtained Plaintiff's consumer report from a reporting agency, Sterling, which had designated Plaintiff as "Level 2."  This designation prevented a conditional hire from starting employment and indicated that the application needed further review.  Sometime after August 15, 2019, Plaintiff called the employer to ask about the status of her application.  The employer informed Plaintiff she did not get the job because "something had come up on her background check."  (Id. ¶ 22).  According to Plaintiff, Defendant did not provide Plaintiff with a pre-adverse

action notice, including a copy of Plaintiff's consumer report, before or after informing Plaintiff she did not get the job.  (Id. ¶¶ 23–24).

In January 2020, Plaintiff again applied for a security position with Defendant and was, again, conditionally offered employment pending a background check.  Again, Defendant obtained Plaintiff's consumer report from Sterling, which again listed Plaintiff at the "Level 2" designation. Plaintiff called the employer to follow up regarding Plaintiff's start date and was told by an Allied supervisor that Plaintiff could not be hired because Plaintiff had a felony on her background report and the felony must be expunged for Plaintiff to be hired. (Id. ¶ 28).  Defendant emailed Plaintiff a "Criminal History Disclosure Form," but did not include a copy of Plaintiff's consumer report. (Id. ¶ 29.)  The SASC does not indicate what Plaintiff did with the disclosure form.

Notably, Plaintiff, in the SASC, pleads that she was "ineligible" for employment for both positions.  (Id. ¶¶ 20, 27.)  Further, Plaintiff does not allege that the Level 2 coding was improper or inaccurate.  Likewise, the SASC does not deny that Plaintiff has a criminal record.  Rather, Plaintiff admits that she was told she was not hired because of her criminal record, but never pleads this fact was inaccurate.  (Id. ¶ 28.)

## IV. ARTICLE III STANDING

### a.  Legal Standard

Article III of the Constitution is built on the concept of separation of powers and confines the federal judicial power to resolving "cases" and "controversies."  See TransUnion, 141 S. Ct. at 2203.  For there to be a case or controversy under Article III, the plaintiff must have standing. Id.  Plaintiff, as the party invoking federal jurisdiction, bears the burden of demonstrating that she has Article III standing.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).  To establish

4

standing, Plaintiff must show that she (1) suffered an injury in fact that is concrete, (2) that the injury is fairly traceable to the conduct of the defendant, and (3) that the injury is likely to be redressed by judicial relief.  Id. at 560–61.

At issue here is the requirement of Plaintiff demonstrating that she suffered concrete harm sufficient to establish Article III standing.  Concrete harms are "real, and not abstract." Spokeo, 578 U.S. at 340 (internal quotation marks omitted).  Intangible harms can also be concrete, including reputational harms.  Id.

As discussed in detail below, see supra pp. 5–7, the Supreme Court explained in TransUnion that for standing purposes, there is an important distinction between "(i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff 's suffering concrete harm because of the defendant's violation of federal law."  141 S. Ct. at 2205.  Congress may enact legal obligations or prohibitions and create causes of action for plaintiffs to sue those who violate them.  Id.  However, pursuant to Article III, an injury in law is not necessarily an injury in fact and, thus, only plaintiffs who have shown that they suffered concrete harm by a defendant's statutory violation have standing to sue that defendant in federal court.  Id.  Furthermore, the mere risk of future harm, without more, is not sufficient to demonstrate Article III standing in a damages suit.  Id. at 2210.

    b.  **Case Law**

        i.    **TransUnion, LLC v. Ramirez**

In TransUnion, LLC v. Ramirez the Supreme Court distinguished between groups that do and do not have Article III standing, reiterating the principle that only plaintiffs suffering "concrete

harm" due to a defendant's statutory violation have the standing to seek damages against that private defendant in federal court.  141 S. Ct. 2190 (2021).

In TransUnion, a jury returned a verdict in favor of the plaintiff, Sergio Ramirez, who alleged that he suffered an injury when TransUnion, a credit reporting agency, issued a report which erroneously listed him as a match for a terrorist list maintained by the Treasury Department. Id.  Ramirez's claim alleged three violations of the FCRA.  Specifically, that TransUnion: (1) failed to follow reasonable procedures to ensure the accuracy of information in Ramirez's credit file; (2) failed to provide Ramirez with complete information by mailing him his credit report and summary of rights without the terrorist alert, and (3) failed to provide Ramirez with a summary of his rights with each written disclosure of his credit report, because the information with the terrorist alert was sent separately from the summary of his rights.  Id. at 2202.

Ramirez also sought to certify a class of 8,185 people in the United States to whom TransUnion sent a mailing including the terrorist notification, but not including the summary of FCRA rights.  Id.  Before the trial, the parties had stipulated that only 1,853 members of the class, including Ramirez, had their credit reports sent by Defendant to potential creditors during the alleged period.  Id. at 2202. The District Court ruled that all 8,185 class members had Article III standing and the Ninth Circuit affirmed in relevant part.  Id.

The Supreme Court reversed the judgment of the Ninth Circuit and remanded the case, finding that only the group of 1,853 putative class members had standing for the reasonable procedures claim but that the other members did not.  Id. at 2209.  The Court held that the group of 1,853 had demonstrated concrete reputational harm in having their inaccurate credit reports sent to potential creditors, while the remaining 6,332 putative class members had not demonstrated concrete reputational harm because TransUnion did not provide these class members' credit

information to any potential creditors.  Id. at 2209–10, 2212.  Specifically, the Court held that, "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm."  Id. at 2210.  The group of 6,332 putative class members in TransUnion did not demonstrate that the risk of future harm materialized,  id. at 2211–12, could not provide evidence that the inaccurate alerts in their internal TransUnion credit files were ever provided to third parties or caused a denial of credit, and thus there was no evidence these class members were independently or concretely harmed by their exposure to the risk itself.  Id. at 2212.  Therefore, the Court determined that the risk of future harm was too speculative in this case to support Article III standing.  Id.

Additionally, the Court held that all the putative class members, apart from Mr. Ramirez himself, had not demonstrated that the alleged "formatting error"—the failure to send information in the format required by statute—"caused them a harm that had a close relationship to a harm traditionally recognized as providing a basis for a lawsuit" under Article III principles.  Id. at 2208, 2213.  The Court additionally held that the putative class members' argument asserting that the violations created a risk of future harm did not support Article III standing.[1]  Id. at 2213.

## ii.   Third Circuit Precedent

### 1.   *Long v. SEPTA*

---

[1] TransUnion applied the principles announced by the Supreme Court in Spokeo Inc. v. Robins, 578 U.S. 856, 136 S. Ct. 1540 (2016).  There, the Court cautioned that plaintiffs do not "automatically satisfy[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  Id. at 1549. However, when a procedural right protects a concrete interest, a violation of the procedural right may pose a "risk of real harm" that does satisfy the concreteness requirement.  Id.

In <u>Long v. SEPTA</u>, 903 F.3d 312 (3d Cir. 2017), plaintiffs were not hired because of criminal history disclosed in their background reports, and the defendant employer failed to provide copies of those reports, or a notice of plaintiffs' rights, under the FCRA.  <u>Id.</u> at 316–17. The Third Circuit addressed (1) whether plaintiffs had standing to sue even though there was no inaccurate information in the reports that plaintiffs could have disputed, if given the opportunity, and (2) whether plaintiffs had standing on the grounds that the notice did not advise them of their rights under the statute.  <u>Id.</u> at 318.

On the first issue the court concluded, plaintiffs had standing to sue, regardless of whether the reports were inaccurate, for a violation of the FCRA.  In so holding, the Third Circuit noted: "taking adverse action without providing the required consumer report is the very harm that Congress sought to prevent" through enacting the FCRA.  <u>Id.</u> at 324 (quoting <u>Susinno v. Work Out World Inc.</u>, 862 F.3d 346, 352 (3d Cir. 2017) (internal quotations omitted).

On the other hand, the Court ruled that Plaintiffs did not have standing to claim that SEPTA violated the FCRA by failing to notify Plaintiffs of their rights under the statute.  The Court ruled that this failure was "a bare procedural violation, divorced from any concrete harm," because "Plaintiffs became aware of their FCRA rights and were able to file this lawsuit within the" appropriate limitations period, and were thus not injured.  <u>Id.</u> at 325 (quoting <u>Spokeo</u>, 136 S. Ct. at 1549) (internal quotation marks omitted).

### 2.   *Thorne v. Pep Boys*

In <u>Thorne v. Pep Boys Manny Moe & Jack</u>, the plaintiff filed a class action complaint alleging that the defendant violated its tire registration obligations under 49 C.F.R. § 574.8.  980 F.3d 879, 884 (3d Cir. 2020).  Specifically, the plaintiff alleged that the defendant deprived her of

the benefit of the bargain by selling her tires without registering them, because registered tires are worth less than registered tires.  Id.  She alternatively alleged intangible harm because unregistered tires pose a risk to her person or property if she is unreachable upon the tires' recall.  Id.

The Third Circuit held that Thorne did not have standing to pursue her claims for three reasons:

> 1. First, it held that she failed to plead a theory of economic harm because placing any value about zero dollars on her alleged injury would require conjecture.  Id. at 886.  She did not provide any support for her theory that the tires were worth less than what she paid for them.  Id. at 889.
>
> 2. Second, the Court held that the plaintiff also did not plead an intangible yet concrete injury.  Id.  She provided no persuasive historical analogue for her alleged harms, and no evidence of Congress elevating the alleged harm to be the subject of private lawsuits.  Id. at 891.
>
> 3. Third, the Court held that the plaintiff only put forth a speculative injury.  Id. at 893.  She alleged only a highly speculative chain of future events that would each have to occur for her to be damaged, and this chain did not make any injury "certainly impending," nor present a "substantial risk."  Id. at 893–94.

Importantly, the Thorne Court found Long unhelpful for the plaintiff's arguments because the lack of FCRA-required notice in Long was a "bare procedural violation" like Thorne's alleged harm from unregistered tires.  Id. at 895–94.

This Court must now apply Long and Thorne in light of TransUnion.  Although Long held that plaintiffs had standing even when the consumer reports at issue contained no inaccurate information, TransUnion raised the bar.[2]   There, class members without evidence that the

---

[2] See Ward v. Nat'l Patient Acct. Servs. Sols., Inc., No. 20-5902, 2021 WL 3616067, *6 (6th Cir. Aug. 16, 2021) ("So where do things stand after TransUnion? It appears that, despite Spokeo's suggestion, a risk of harm is not sufficient, in and of itself, to be a concrete injury for standing purposes in a suit for damages . . . .") (Moore, J., dissenting).

inaccuracies in their credit files caused a denial of credit were found to not have standing. Accordingly, this Court believes that to have standing, FCRA plaintiffs must now show that they suffered a concrete harm along the following lines: their failure to be provided with a credit report proximately caused them to experience an adverse employment action.

### iii.     District Court Case

Our District Court has applied TransUnion once since its publication. See Christa Ann Iwaniw v. Early Warning Servs., LLC, CV 20-5266, 2021 WL 3209856 (E.D. Pa. July 28, 2021) (Rufe, J.). In Iwaniw, the plaintiff alleged she was injured when the defendant, a consumer reporting agency, repeatedly failed to redact the last five digits of the plaintiff's social security number ("SSN") from the plaintiff's consumer report in violation of 15 U.S.C. § 1681g(a)(1)(A). Id. The Court granted the defendant's motion to dismiss, determining under TransUnion that the plaintiff's alleged injury merely constituted a "risk of future harm," which does not on its own support Article III standing for a claim of damages. Id.

### iv.     Sixth Circuit Case

The Sixth Circuit has applied TransUnion since its publication. See Ward v. Nat'l Patient Acct. Servs. Sols., Inc., No. 20-5902, 2021 WL 3616067 (6th Cir. 2021). There, the plaintiff sued a debt collector under the Fair Debt Collection Practices Act ("FDCPA"). The debt collector, NPAS, Inc. left the plaintiff voice messages on behalf of a medical center where the plaintiff had outstanding balance for medical treatments. Id. at *1. It identified itself as "NPAS" in the messages. Id. The plaintiff filed a lawsuit under the FDCPA, alleging that NPAS (1) failed to identify itself as a debt collector; (2) failed to identify its proper business name; and (3) placed phone calls without meaningful disclosure of its identity. Id.

The Ward Court held that the plaintiff did not have standing to sue, because NPAS's failure to state its full name in voice messages did not create a harm corresponding to a common law or historical analogue, nor did the failure cause him any concrete harm.  Id. at *3–4.  Although the plaintiff argued that the incomplete voice messages caused him to suffer confusion and retain counsel to prevent further calls, neither of those are concrete injuries.  Id. at *4.  Therefore, Mr. Ward only suffered a "bare procedural violation" of the FDCPA.  Id.

### c.  **Supplemental Briefing**

On June 28, 2021, this Court ordered Plaintiff and Defendant to file supplemental briefs addressing what impact, if any, the Supreme Court's recent decision in TransUnion has on this case.  (ECF 96.)

Plaintiff argues in her supplemental brief that TransUnion confirms she has Article III standing.  (Pl.'s Supp. Br., ECF 99.)  Specifically, Plaintiff argues that she "and the putative class members suffered a harm Congress had the power to identify and elevate to an injury in fact," namely, having been "subjected to an adverse employment action without first being provided pre-adverse action notice pursuant to § 1681b(b)(3)(A)."  (Id. at 4.)

Defendant argues that TransUnion precludes the certification of the putative class because the case requires every class member to have Article III standing, which Plaintiff has not demonstrated.  (Def.'s Supp. Br. at 3, ECF 104.)  Under Defendant's reading of TransUnion, to have standing, Plaintiff and the putative class members must have suffered an adverse employment action without having received the required pre-action notice.  (Id. at 4–5.)  Specifically, Defendant argues that Plaintiff and the putative class members whose applications were coded as Level 2 did not endure either a constitutional harm ot an FCRA violation, because a Level 2 designation does

not equate to an adverse action.  (Id. at 6).  Rather, to establish standing, Plaintiff and the putative

class members must show that after they received a Level 2 designation, they were not moved to

a Level 1 or 3, the reasons why Plaintiff and members were not moved, and how that resolution

resulted in an adverse employment action.  (Id.)

>        **d.   Analysis**

Following the above precedents, this Court holds that Plaintiff does not have standing to

pursue her FCRA claim.  The facts show that she suffered no "concrete harm" due to any act or

omission by Defendant.

Considering the entire record, in the light most favorable to Plaintiff, Plaintiff was not hired

by Defendant because of her criminal history, not because of the alleged FCRA violation.

Defendant's failure to send her a copy of her consumer report is a mere procedural error, like the

"formatting error" discussed in TransUnion, or the "procedural error" discussed in Long.

Even if Plaintiff *had* received a copy of her consumer report, it would have done her no

good, because, crucially, she admits that she has a criminal record and that she was ineligible for

employment.  Thus, the alleged lack of opportunity to have a meaningful discussion about the

report's contents cannot be proximately connected to any concrete harm.

Plaintiff concedes several important points in her pleadings and other parts of the record.

For example, Plaintiff knew she had a criminal record when she applied to the two job openings.

The Court interprets the SASC to show that Plaintiff knew she was ineligible for employment.

(SASC 6, ¶ 20 ("As a Level 2 with a 15 score, Plaintiff was ineligible for employment."); id. ¶ 27

(same)).  Moreover, Plaintiff admitted the existence of multiple criminal charges and time spent

in jail during her deposition.[3]  These admissions require the Court to conclude that Plaintiff entered the application process understanding that she was ineligible for employment, and therefore did not suffer any concrete harm because of the allegedly flawed FCRA notification procedures.

## V.  SUMMARY JUDGMENT

Alternatively, if Plaintiff does have standing, the Court will now consider the Defendant's Motion for Summary Judgment and concludes that Defendant's Motion is Granted.

### a.  Legal Standard

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is considered "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is considered "material" if it may affect the outcome of the case under governing law.  Id.

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  After the moving party has met its initial burden, the non-moving party's

---

[3] For example, Plaintiff testified: "I did have a marijuana charge, and I went to jail for it."  (21:12–13).  At this time, she was also serving time for the theft of goods: "[Y]es, I was in jail for both of them at the time."  (Davis Dep., 21:20–21, ECF 62-5).  When asked if she pled guilty to the theft of goods, she answered "[y]es."  (Id. at 21:24).  Further, Plaintiff testified: "[T]he second time I went to jail [because] the police said I was disturbing the peace at City Hall."  (Id. at 22:25–23:2).  She also testified that her cousin "called the police and told the police [Plaintiff] pulled a gun out on her and said [Plaintiff] was going to kill her and her husband."  Although Plaintiff disputes the accuracy of her cousin's account, she admits to being arrested and going to jail for it.  (Id. at 24:5–25:4.)

response must, "by affidavits or as otherwise provided in [Rule 56] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In considering a motion for summary judgment, courts must view all facts and inferences in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). Accordingly, the non-movant's evidence is to be believed and all justifiable inferences are to be drawn in the non-movant's favor. Anderson, 477 U.S. at 255. In addition, determinations of credibility, weighing of evidence, and drawing of legitimate inferences from the facts are functions of a jury, not those of a judge. Id.

### b. **Analysis**

In the alternative, even if Plaintiff *did* have standing, this Court would grants Defendant's Motion for Summary Judgment on two grounds: (i) Plaintiff did not suffer an adverse employment action; and/or (ii) Plaintiff cannot show causation. See generally Joint Stock Soc. v. UDV N. Am., Inc., 266 F.3d 144, 168, 186 (3d Cir. 2001) (affirming district court's dismissal of case for lack of standing, and alternative dismissal granting summary judgment in favor of defendants).

### ii. **No Adverse Employment Action**

Defendant's meritorious argument in support of its motion for summary judgment is that the undisputed facts demonstrate that Plaintiff did not suffer and adverse employment action and therefore her FCRA claim fails as a matter of law. A preliminary, intermediate coding, "Level 2," of an applicant without the intent to take adverse action does not trigger FCRA notice

requirements.  See Moore v. Rite Aid Headquarters Corp., 33 F. Supp. 3d 569, 574–76 (E.D. Pa. 2014) (DuBois, J.) (internal adjudication system that codes applicants does not equate to adverse action).  (See Def.'s Mem. 10, ECF 68.)

As Defendant explains, Allied's preliminary "Level 2" code calls for further investigation and evaluation before any adverse action is intended or carried out.  See Ramos v. Genesis Healthcare, LLC, 141 F. Supp. 3d 341, 348 (E.D. Pa. 2015) (Kearney, J.) (granting summary judgment in favor of employer where applicant's code changing from "needs review" to "does not meet" only reflected internal decision to take adverse action and did not trigger FCRA notice requirements).

### i.    No Causation

Even if Plaintiff could show an adverse action, she still cannot show causation.  Like Plaintiff's failure to have standing, her failure to get the job was not caused by any act or omission by Defendant that violated the FCRA.  Plaintiff admitted that she is often untruthful on job applications.  (Davis Dep. 46:19–23.) And, since it appears undisputed that Plaintiff did in fact have a prior criminal record, Plaintiff cannot show that the employment outcome would have been different even if Defendant had notified Plaintiff appropriately with a copy of her consumer report. Since Plaintiff cannot show the threshold causal connection between her alleged injury and Defendant's purportedly unlawful conduct, summary judgment should be granted.[4]

### VI. CONCLUSION

---

[4] Because this Court concludes that Plaintiff does not have standing, or alternatively, that Defendant is entitled to summary judgment, the Court will deny Plaintiff's Motion for Class Certification as moot.

For the foregoing reasons, the Court will dismiss the case for lack of standing, and therefore jurisdiction.

Alternatively, even if Plaintiff does have standing, the Court finds that Defendant has met its burden in moving for summary judgment, and the Court would dismiss the case on that basis as well.

/volumes/judge baylson/civil 20/20-1758 davis v. allied/dismissal memo.docx

16